# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 1, 2021

## IN RE MADYLYNN C. ET AL.

**Appeal from the Juvenile Court for Dickson County**
**No. 02-20-022-TPR  Michael Meise, Judge**

_____

### No. M2021-00184-COA-R3-PT

_____

This is a termination of parental rights case.  Appellants, the children's biological mother and father, appeal the trial court's termination of their respective parental rights to the four children on the grounds of: (1) abandonment by an incarcerated parent by wanton disregard, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv); (2) substantial non-compliance with the requirements of the permanency plans, Tenn. Code Ann. § 36-1-113(g)(2); (3) persistence of the conditions that led to the children's removal, Tenn. Code Ann. § 36-1-113(g)(3)(A); (4) severe child abuse, Tenn. Code Ann. § 36-1-113(g)(4); and (5) failure to manifest an ability and willingness to assume custody, Tenn. Code Ann. §36-1-113(g)(14).  Appellants also appeal the trial court's determination that termination of their respective parental rights is in the children's best interest.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KRISTI M. DAVIS, J., joined.

Jennifer Honeycutt and Raquel Avina Abel, Franklin, Tennessee, for the appellant, Afton C.[1]

Nicole R. McLeod, Dickson, Tennessee, for the appellant, Preston S.

Herbert H. Slatery, III, Attorney General and Reporter, and Lexie A. Ward, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

## OPINION

## I. Background

This case concerns four minor children: (1) Madylynn C. (d/o/b September 2006); (2) William S. (d/o/b August 2008); (3) Rylee S. (d/o/b August 2015); and (4) Carson S. (d/o/b January 2018). Appellant Afton C. ("Mother") is the biological mother of the children. Appellant Preston S. ("Father," and together with Mother, "Appellants") is the biological father of William S., Rylee S., and Carson S. Matthew E. is the biological father of Madylynn C. In its final order, the Juvenile Court for Dickson County ("trial court") held that, "Matthew E[.] surrendered his parental rights and the time to revoke his surrender has passed." Matthew E. did not appeal this holding.

Appellee Tennessee Department of Children's Services ("DCS") first became involved with this family in 2016, when it filed a petition for order controlling conduct and protective supervision. In the 2016 petition, DCS alleged that Madylynn, William, and Rylee were dependent and neglected based on the following: (1) Mother's positive drug test while giving birth to Rylee; (2) Mother's and Father's actions of "melting down [drugs] and shooting up in the home;" (3) Mother and Father using methamphetamine in the home; and (4) a referral that Rylee had been tested for possible lead poisoning and was being medically neglected. The children were not removed in 2016, and the parents completed all services and requirements that were requested of them at that time.

The instant case began in 2018 when DCS filed a dependency and neglect petition. The petition alleged drug exposure, lack of supervision, criminal activity, domestic violence, and both parents' frequent incarcerations. Father also admitted that he was on drugs at the time of removal, and that he and Mother had no stable housing. On November 15, 2018, the trial court placed custody with DCS. On November 28, 2018, a hair sample was collected from Carson, who was less than a year old; he tested positive for methamphetamine. On April 29, 2019, the children were adjudicated dependent and neglected, and Carson was found to be the victim of severe abuse perpetrated by Mother and Father, pursuant to Tenn. Code Ann. § 37-1-102(27), due to his testing positive for methamphetamine and the Appellants' knowing exposure of the child to illegal drugs. This finding was not appealed.

Concerning Mother's criminal history, since the children were removed to DCS custody, she has been incarcerated approximately six times. Mother's longest period of incarceration, for methamphetamine related charges incurred after the children were in DCS custody, was from January 9, 2020 until July 18, 2020. During the custodial episode, Mother continued to incur new criminal charges after the children's removal, including possession of drug paraphernalia, manufacturing illegal substances, selling methamphetamine, and failure to appear.

Concerning Father's criminal history, prior to the children entering DCS custody, he was incarcerated for shoplifting and was released just days before the children were removed. After the children were removed from his custody, Father continued to participate in activities that resulted in additional incarcerations. During his testimony, Father admitted to using illegal drugs throughout the custodial episode. Prior to trial, Father's most recent incarceration was from October 3, 2019 until he was released in February 2020 to complete his sentence at the Hope Center. Throughout the custodial episode, Father was incarcerated for numerous offenses, including violation of probation, shoplifting, and a failure to pay child support. As discussed in detail below, during the course of these proceedings, DCS worked with Appellants to create four permanency plans.

On February 28, 2020, DCS filed a petition to terminate the parental rights of Mother and Father. The trial court held a hearing on November 19, 2020.[2] By order of January 26, 2021, the trial court terminated Mother's and Father's parental rights on the grounds of: (1) abandonment by an incarcerated parent by wanton disregard; (2) substantial noncompliance with the requirements of the permanency plans; (3) persistence of the conditions that led to the children's removal; (4) severe child abuse; and (5) and failure to manifest a willingness and ability to assume custody. The trial court also found that termination of Mother's and Father's parental rights is in the children's best interests. Mother and Father appeal.

## II. Issues

We restate the dispositive issues as:

1. Whether there is clear and convincing evidence to support the trial court's termination of Mother's and/or Father's parental rights on any of the statutory grounds found by the trial court.

2. If so, whether there is clear and convincing evidence that termination of Mother's and/or Father's parental rights is in the children's best interest.

## III. Standard of Review

The Tennessee Supreme Court has previously explained that:

A parent's right to the care and custody of [his or] her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clause of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption*

---

[2] Mother received notice of the hearing but did not attend. However, her attorney was present.

- 3 -

***of Female Child***, 896 S.W.2d 546, 547-48 (Tenn. 1995); ***Hawk v. Hawk***, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. ***In re Angela E.***, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." ***Hawk***, 855 S.W.2d at 580 (quoting ***In re Hamilton***, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also **Santosky v. Kramer***, 455 U.S. 745 (1982); ***In re Angela E.***, 303 S.W.3d at 250.

***In re Carrington H.***, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute, which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" ***In re Jacobe M.J.***, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting ***In re W.B.***, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of one of the statutory grounds; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); ***In re D.L.B.***, 118 S.W.3d 360, 367 (Tenn. 2003); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. ***Santosky***, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); ***In re Valentine***, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." ***In re M.J.B.***, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination of parental rights cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***In re Carrington H.***, 483 S.W.3d at 523-24 (citing ***In re Bernard T.***, 319 S.W.3d 586, 596 (Tenn. 2010)); ***In re M.L.P.***, 281 S.W.3d 387, 393 (Tenn. 2009); ***In re A.M.H.***, 215 S.W.3d 793, 809 (Tenn. 2007). The Tennessee Supreme Court has explained that:

The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. ***In re M.L.P.***, 281 S.W.3d at 393

- 4 -

(quoting *In re* [*A.M.H.*], 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524. With the foregoing in mind, we turn to our review.

## IV. Grounds for Termination of Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent or guardian's parental rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E*., 303 S.W.3d at 251 n.14. Here, the trial court terminated Mother and Father's respective parental rights on the same grounds: (1) abandonment by an incarcerated parent by wanton disregard; (2) substantial noncompliance with the requirements of the permanency plans; (3) persistence of the conditions that led to the children's removal; (4) severe child abuse; and (5) and failure to manifest a willingness and ability to assume custody. We now turn to address each of these grounds.

### A. Abandonment by an Incarcerated Parent by Wanton Disregard

The trial court found, by clear and convincing evidence, that Mother and Father abandoned the children. Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

As is relevant to this appeal, Tennessee Code Annotated section 36-1-102(1)(A)(iv) defines abandonment as follows:

> (iv) A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and []:

***

(c) Has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. . .

This statutory provision "reflects the commonsense notion that parental incarceration is a strong indicator that there may be other problems in the home that threaten the welfare of the child." ***In re Audrey S.***, 182 S.W.3d at 866. Incarceration itself does not satisfy the test for abandonment by wanton disregard; the court must find "by clear and convincing evidence that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." ***Id.*** A "parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." ***Id.*** "[P]robation violations, repeated incarcerations, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of the child." ***Id.*** at 867-68.

In its order terminating Appellants' parental rights, the trial court found:

The petition [to terminate Appellants' parental rights] was filed on February 28, 2020. The father testified that he was incarcerated from October of 2019 through February of 2020. He also testified that he was incarcerated a few times throughout the case. The [DCS] caseworker, Tammy Lawler, testified that mother was incarcerated from January of 2020 through June of 2020.

The record supports the trial court's finding that both Mother and Father were incarcerated "during all or part of the four (4) consecutive months immediately preceding the filing of the action." The trial court also found, by clear and convincing evidence, that Appellants' numerous incarcerations, criminal behavior, substance abuse, and general failure to support or supervise the children constituted "a wanton disregard for the welfare of the child[ren]." The record supports this conclusion.

Before her January 9, 2020 through July 18, 2020 incarceration, Mother clearly engaged in conduct that exhibited a wanton disregard for the children's welfare. Specifically, since the time the Children were placed in DCS custody, Mother has been incarcerated at least five times for various charges, including possession of drug paraphernalia, manufacturing illegal substances, selling methamphetamine, and failure to appear. In fact, prior to the current custodial episode, DCS was involved with the family in 2016 based on allegations including: (1) Mother testing positive for drugs while giving birth to Rylee; (2) Mother's and Father's use of drugs in the home; and (3) potential lead poisoning of Rylee. The record shows that despite DCS's reasonable efforts to assist her,

- 6 -

Mother failed to avail herself of the opportunity to address her drug use. Mother continued to test positive for drugs throughout these proceedings. As discussed in further detail below, despite attempts at recovery, Mother failed to maintain sobriety. This failure was likely due to Mother's refusal to participate in either an intensive oupatient program, or an in-patient rehabilitation program. The record clearly and convincingly supports the trial court's termination of Mother's parental rights on the ground of abandonment by an incarcerated parent by wanton disregard.

Concerning Father, he was incarcerated from October 3, 2019 until February 2020 for violating his probation, shoplifting, and failure to pay child support. The record shows that, prior to his incarceration, Father engaged in conduct that exhibited a wanton disregard for the children's welfare. In relevant part, Father testified:

> Q [to Father]. What criminal charges have you incurred since November 2019?
> A. Just shoplifting.
> Q. What were you in jail for from October to February of 2020?
> A. Violation of probation for the shoplifting and child support.
> Q. What did you do to violate your probation?
> A. Just didn't report.
> Q. Would you agree that throughout the time your children have been in custody, you've been involved in a lot criminal activity?
> A. Not a lot but, yes, ma'am, criminal activity.
> Q. In and out of jail a lot?
> A. Yes, ma'am.
> Q. And a lot of drug use?
> A Yes, ma'am.

Father's candid testimony provides clear and convincing evidence to support the trial court's finding that he has demonstrated a wanton disregard for the children's welfare. In addition to his shoplifting and violation of probation charges, the record shows that several of Father's incarcerations were due to the nonpayment of child support—both before and after DCS involvement—based on orders for these children and other children not subject to the case. In addition to these criminal matters, Father also admitted to using illegal drugs and, as contained in Trial Exhibit 33, tested positive for methamphetamine on December 28, 2018. Father was also subject to the 2016 DCS investigation, which was based on drug use in the home. From the totality of the circumstances, there is clear and convincing evidence to support the trial court's termination of Appellants' respective parental rights on the ground of abandonment by an incarcerated parent by wanton disregard.

**B. Substantial Non-Compliance with the Requirements of the Permanency Plans**

The trial court found, by clear and convincing evidence, that Mother and Father's respective parental rights should be terminated on the ground of failure to substantially comply with the requirements of the permanency plans. Tennessee Code Annotated section 36-1-113(g)(2) provides that a parent's rights may be terminated when "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan."

"[T]he permanency plans are not simply a series of hoops for the biological parent to jump through in order to have custody of the children returned." *In re C.S., Jr., et al.*, No. M2005-02499-COA-R3-PT, 2006 WL 2644371, at *10 (Tenn. Ct. App. Sept. 14, 2006). Rather,

> the requirements of the permanency plan are intended to address the problems that led to removal; they are meant to place the parent in a position to provide the children with a safe, stable home and consistent appropriate care. This requires the parent to put in real effort to complete the requirements of the plan in a meaningful way in order to place herself in a position to take responsibility for the children.

*Id*.; *accord* *In re Heaven J.*, No. W2016-00782-COA-R3-PT, 2016 WL 7421381, at *8 (Tenn. Ct. App. Dec. 22, 2016). As discussed by this Court:

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), the Department must demonstrate first that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place, *In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002); *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003), and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. *In re Valentine*, 79 S.W.3d at 548-49; *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003). Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance. *In re Valentine*, 79 S.W.3d at 548.

*In re M.J.B.*, 140 S.W.3d at 656-57.

Four permanency plans were created for Mother and Father on the following dates: January 23, 2019; August 14, 2019; February 19, 2020; and September 9, 2020. Both

Mother and Father participated in and signed the first plan and signed the criteria and procedures for termination. Although neither Mother nor Father participated in the development of the second or third plans, they did sign the criteria and procedures. Neither parent participated in the creation of the fourth plan. The requirements set out in all four plans remained largely the same. The requirements were that both Mother and Father were to: (1) complete an alcohol and drug assessment and follow all recommendations thereof; (2) submit to random drug screens and pass; (3) sign releases of information for DCS; (4) complete domestic violence classes and follow all recommendations thereof; (5) complete a mental health intake and follow all recommendations thereof; (6) resolve shoplifting and any other pending charges; and (7) complete parenting classes and follow all recommendations thereof. In addition to the foregoing requirements, under the third plan, Mother was to: (1) complete her discharge recommendations from rehabilitation by attending AA/NA meetings and obtaining a sponsor; and (2) participate in a second alcohol and drug assessment. Under the third plan, both Mother and Father were to complete psychological evaluations and follow all recommendations thereof.

Throughout this case, DCS attempted to assist the Appellants in completing the foregoing requirements by: (1) requesting funding for services numerous times, over periods of several months for both parents; (2) attempting to stay in contact with the parents; and (3) providing transportation and general help. The trial court ratified all four of the permanency plans and found that the Appellants' respective responsibilities thereunder were reasonably related to remedying the conditions that necessitated foster care. *See **In re Valentine***, 79 S.W.3d at 547 ("A trial court must find that the requirements of a permanency plan are reasonable and related to remedying the conditions which necessitate foster care placement.") (internal quotations omitted).

In its order terminating Appellants' parental rights, the trial court found that Mother and Father failed to substantially comply with the foregoing requirements. Specifically, the trial court's order states:

> The testimony of [Father] was that he did stay in contact with the caseworker, though certainly not as often as he should have. He testified that he is currently receiving services from Health Connect and also addressing his recovery, but that it has only been since December of 2019. He did admit that he had not completed the parenting classes, and he still had no stable housing once he was finished with recovery. He testified that during a large portion of the history of the case, he continued to use illegal drugs; however, he is addressing his drug issues now. He also testified that he never read his psychological evaluation. [Father] testified that he has not substantially complied with the task in the permanency plan.
>
> The caseworker testified that. . . mother did participate in a 28-day treatment program, but then continued to use drugs after she was released from treatment. She did not follow the recommendations upon release from

the program. The mother also has not proven that she has a suitable home. Throughout the case, she was in and out of jail. The mother and father were inconsistent as to visitation throughout the case.

The Camelot caseworker testified that the parents' visitation throughout the case was inconsistent, and that the visitations that did occur were not quality visits. She also testified that neither parent was consistent with parenting classes; with following through with their alcohol and drug classes; or attending their domestic violence classes. In fact, she had to discharge their case for noncompliance.

The foster mother also testified that visitation was inconsistent. When she and her husband would take the children to visitation, the parents would often not show up.

Therefore, the court finds by clear and convincing evidence that [the] ground [of failure to substantially comply with the requirements of the permanency plans] has been proven by clear and convincing evidence.

The record supports the trial court's findings. Ms. Lawler, the DCS caseworker, testified as follows concerning Mother's lack of compliance with the requirements of the permanency plans:

Q. Is [Mother] in substantial compliance with the tasks listed for her on the permanency plan?
A. No.
Q. What tasks has [Mother] completed?
A. As far as I know, other than the one 28-day in CAAPS, that's it. She completed the assessment, the psychological assessments.
Q. But she did not follow the recommendations?
A. No, she has not followed the recommendations.
Q. And has she maintained contact with you?
A. No.
Q. Are you able to assist a parent who will not communicate with you?
A It's really, really hard.

Ms. Lawler's testimony is not disputed. Although Mother took the initial steps of completing a psychological assessment and a drug assessment, she failed to follow the recommendations of those assessments. Furthermore, although Mother completed twenty-eight (28) days in a rehabilitation facility, she failed to follow discharge recommendations and relapsed. When DCS attempted to assist her in enrolling in an intensive out-patient program, Mother did not participate; Mother also did not attend any in-patient rehabilitation. Ms. Lawler further testified that Mother failed to complete a parenting course, domestic violence classes, or a mental health intake. In short, it is clear that Mother failed "to address the problems that led to [the children's] removal," and failed "to put in real effort to complete the requirements of the plan in a meaningful way." ***In re C.S., Jr.,***

- 10 -

*et al.*, 2006 WL 2644371, at \*10. As such, there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of substantial noncompliance with the requirements of the permanency plan.

Turning to Father, the record indicates that he, too, failed to make significant efforts on his requirements under the permanency plans. In the first instance, Father waited more than one year to complete any of the permanency plan requirements. "This Court [has] previously recognized that a parent's efforts to comply with a permanency plan after the filing of a petition to terminate can be 'too little, too late.'" ***In re Maya R.***, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, \*6 (Tenn. Ct. App. Apr. 4, 2018). Still, Father failed to complete a parenting course, domestic violence course, a psychological evaluation, or an alcohol and drug assessment, and, although he submitted to a mental health intake, he failed to follow the recommendations thereof. As Father testified,

Q [to Father]. Did you complete a mental health intake?
A. Yes, ma'am.
Q. Did you follow the recommendations for individual therapy?
A No, ma'am. . . .

\*\*\*

Q. Have you ever participated in family therapy with your children?
A. No, ma'am.
Q. Did you complete your parenting classes?
A. No, ma'am.

\*\*\*

Q. Would you agree that you have not substantially complied with the tasks listed on the permanency plan?
A Yes, ma'am.

From Father's testimony, and the record as a whole, there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of failure to substantially comply with the requirements of the permanency plan.

### C. Persistence of the Conditions that Led to the Children's Removal

The trial court also terminated Appellants' parental rights under Tennessee Code Annotated section 36-1-113(g)(3), a ground commonly referred to as "persistence of conditions." ***In re Audrey S.***, 182 S.W.3d at 871. The persistence of conditions ground focuses "on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." ***Id***. at 874. The goal is to avoid having a child in foster care for

a time longer than reasonable for the parent to demonstrate the ability to provide a safe and caring environment for the child. ***In re Arteria H.***, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds by **In re Kaliyah S.**,* 455 S.W.3d 533, 555 (Tenn. 2015). Thus, the question before the court is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care." ***In re K.A.H.***, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

> There are several elements to the ground of persistence of conditions:
>
> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;
>
> (B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard;

Tenn. Code Ann. § 36-1-113(g)(3)(A). Each of the statutory elements must be established by clear and convincing evidence. ***In re Valentine***, 79 S.W.3d at 550.

> In its order terminating Appellants' parental rights, the trial court found:
>
> [Father] testified that he has not followed his psychological evaluation recommendations. The father also testified that once he is released from Hope Center Treatment Facility, he has not arranged for housing.
> The DCS caseworker testified that many of the issues in this case have not been remedied. There is no housing by either the father or the mother, and that all of the mother's issues persist. Despite her 28 days in treatment, she continues to suffer from substance disorder. Therefore, the Court finds by clear and convincing evidence that [the] ground [of persistence of

conditions] has been proven.

As discussed above, the children were removed from Appellants' custody on November 15, 2018 due to alleged drug exposure, lack of supervision, criminal activity, domestic violence, and both parents' frequent incarcerations. For many of the reasons previously discussed in this opinion, neither Appellant has sufficiently addressed the conditions that led to the children's removal, much less remedied those conditions. Of primary concern is Appellants' drug use and criminal activity. We have previously discussed the fact that, since the children were removed to DCS' custody, Mother has continued to incur criminal charges, which have resulted in several periods of incarceration. In part, Mother's criminal charges were related to the manufacture and sale of methamphetamine—a fact that clearly indicates that Mother failed to address her involvement with illegal drugs.

Father also failed to address the issues that led to the children's removal from his custody. Although Father was released from jail just days before the children were removed, since that time, he has participated in other criminal activities that resulted in more incarcerations. In addition, Father has failed to address his drug use and has continued to test positive for illegal substances during this custodial episode. From the totality of the circumstances, there is clear and convincing evidence to support the trial court's termination of Appellants' parental rights on the ground of persistence of the conditions that led to the children's removal.

### D. Severe Child Abuse

A trial court may terminate a parent's rights if the parent "has been found to have committed severe child abuse . . . under any prior order of a court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against any child." Tenn. Code Ann. § 36-1-113(g)(4). Tennessee Code Annotated section 37-1-102(b)(27) defines "Severe child abuse," in relevant part, as:

> (E) Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child; or
> (F) Knowingly allowing a child to be within a structure where any of the following controlled substances are present and accessible to the child. . . (iii) Methamphetamine . . .

In its April 29, 2019 adjudicatory order on dependency and neglect, the trial court specifically held:

The Court further finds by clear and convincing evidence that Carson S[.] was a victim of severe abuse pursuant to Tenn. Code Ann. section 37-1-102[(b)](27) due to the knowing exposure to illegal drugs for which the child tested positive.

Neither Mother nor Father appealed the finding of severe child abuse. *See In re Trinity H.*, No. M2020-00440-COA-R3-PT, 2020 WL 5110312, at *10 (Tenn. Ct. App. Aug. 28, 2020) (affirming ground based on a prior finding of severe child abuse perpetrated against a child's siblings when "[t]he record contains no hint that Father ever appealed the finding of severe child abuse"). Because neither Appellant challenged the finality or the validity of the adjudicatory dependency and neglect order, the issue of severe child abuse is res judicata. *See In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012); *In re Heaven L.F.*, 311 S.W.3d 435, 439-40 (Tenn. Ct. App. 2010) (holding that the res judicata doctrine applies "to prevent a parent from re-litigating whether [ ]he committed severe child abuse in a later termination of parental rights proceeding when such a finding had been made in a previous dependency and neglect action") (citing *State v. Tate*, No. 01-9409-CV-00444, 1995 WL 138858, at *5 (Tenn. Ct. App. Mar. 31, 1995)). Finally, we note that, although only one of these four children was found to be the victim of severe child abuse, the statutory ground allows termination when a parent commits severe child abuse "against *any* child." Tenn. Code Ann. § 36-1-113(g)(4) (emphasis added); *see In re Trinity H.*, 2020 WL 5110312, at * 3 (affirming ground based on order adjudicating child's siblings as victims of severe child abuse). Thus, clear and convincing evidence supports the trial court's termination of Appellants' parental rights to all four children on the ground of severe child abuse.

## E. Failure to Manifest a Willingness and Ability to Assume Custody

Tennessee Code Annotated section 36-1-113(g)(14) provides a ground for termination of parental rights when

> [a] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14).

This ground for termination of parental rights requires the movant to establish two elements by clear and convincing evidence. *In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018) (citation omitted). Concerning the first element, DCS has the burden to prove that Mother and Father failed to manifest an ability and willingness to personally assume legal and physical custody or financial

- 14 -

responsibility of the Children. Tenn. Code Ann. § 36-1-113(g)(14). The Tennessee Supreme Court has adopted the interpretation of section 36-1-113(g)(14) set out in *In re Amynn K.*, No. E2017-11866-COA-R3-PT, 2018 WL 3058280 (Tenn. Ct. App. June 20, 2018); *see* *In re Neveah M.*, No. M2019-00313-SC-R11-PT, 2020 WL 7258044, at *14 (Tenn. Dec. 10, 2020) (citing *In re Amynn K.*, 2018 WL 3058280, at *14). The interpretation adopted by our Supreme Court

> places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal custody or financial responsibility for the child. If a person seeking to terminate parental rights proves by clear and convincing evidence that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*In re Neveah*, 2020 WL 7258044, at *14. If the first element is met, then DCS must show that placing the children in Mother's and/or Father's custody poses "a risk of substantial harm to the physical or psychological welfare of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). In this case, the trial court held that DCS met its burden of proof as to both of these elements *vis-à-vis* both parents, to-wit:

> The proof has shown that the parents, specifically the mother, have continued to use drugs throughout the case. Both parents have been in and out of jail throughout the case. Both parents have failed to pay any child support. Both parents were inconsistent with their visitation throughout the case, and though the father is now improving and has begun to address his alcohol and drug issues, he has not yet obtained stable housing. Therefore, the court finds by clear and convincing evidence that [this] ground has been proven.

For many of the foregoing reasons, the evidence supports the trial court's findings. Clearly, neither Appellant has made any significant effort to address the issues that preclude custody. Both Appellants have continued to engage in criminal activity. Neither has stable housing, and they have not paid any support for these children. As such, neither Appellant has demonstrated an ability and willingness to assume custody.

Turning to the second prong of this ground, i.e., that placing the children in Mother's and/or Father's custody poses "a risk of substantial harm to the physical or psychological welfare of the child[ren]," as discussed in further detail below, the record indicates that the children have no meaningful relationship with the Appellants. The Appellants are presently unable to provide a stable, crime-free environment for the children, and there is a question of whether the Appellants will be able to maintain any level of sobriety. In foster care, the children have made great strides. By all accounts, all four of the children are now well-adjusted and happy in their foster home, and the foster parents are anxious to adopt them. To place the children in the custody of either Appellant would clearly put

- 15 -

them at risk of psychological and physical harm. As such, there is clear and convincing evidence to support the trial court's termination of Appellants' parental rights on this ground.

## V. Best Interests

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *In re Bernard T.*, 319 S.W.3d at 606 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793 at 809). As the Tennessee Supreme Court explained:

> Facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555 (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id*. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id*. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

\*\*\*

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2018 Supp.). This list of factors is not exhaustive, nor does the statute "require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W. 3d 652, 667 (Tenn. Ct. App. Aug. 11, 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Each termination of parental rights case includes different circumstances, and the consideration of a single factor or other factors outside those enumerated in the statute, may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

Ascertaining a child's best interests . . . does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s [] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 1994). However, "[w]hen considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tenn. Code Ann. § 36-1-113(i)(2).

In its order terminating Mother and Father's parental rights, the trial court made the following findings concerning the children's best interests:

[T]he court finds that the mother has certainly made no lasting adjustments to remedy the conditions that existed when the children were removed, and, although the father has made recent adjustments by addressing his alcohol and drug issues, he has yet to find a permanent home for the children, and he has not addressed his mental health issues. The mother and the father have not maintained visitation throughout the case; therefore, even though they may have had a meaningful relationship with the children at one time, they certainly do not have a meaningful relationship now. In fact, the testimony of the foster mother is that the children, especially the younger children, refer to the foster parents as mom and dad. The children are currently in a stable and thriving environment in which all of their needs are being met. A change in caretakers at this point would be detrimental to their health and wellbeing. The children are in a loving, pre-adoptive home and they have a strong bond with the foster parents who are anxious to adopt the children. Therefore, the court finds by clear and convincing evidence it is in the best interest of the children that the parental rights of [Mother] and [Father] be terminated.

The record supports the trial court's finding that due to Appellants' failure to visit or otherwise interact with the children, there is no meaningful relationship. As Ms. Lawler testified, initially Mother and Father were permitted two hours of visitation twice per month. Briefly, the visitation schedule was increased to two hours every week but then changed to four hours twice per month due to the extensive travel required of the children. To attend visitation, the children traveled two hours one way – four hours round-trip – to see Mother and Father. As such, Mother and Father were required to give twenty-four hours' notice to confirm a visit because of the children's commute. During his testimony, Father admitted that, between November 2018 and September 2019, nothing prevented him from visiting and that a caseworker offered to provide transportation to visits if he gave advanced notice. Yet, he did not take advantage of this offer. Furthermore, between November 2018 and May 2020, Mother and Father often missed scheduled visitations and did not call in advance to provide notice. As such, during the custodial episode, Mother attended only a couple of visits; while Father attended more visits than Mother, he was also inconsistent and sometimes failed to show up. The children's foster mother testified that when the parents failed to show up for a visit, the children were "extremely upset" and would cry the entire two-hour trip back home. After these episodes, the children would demonstrate behavioral issues for several days. Likewise, when the Appellants failed to follow through with phone visits, the children would become upset. The foster mother testified that, after missed calls, the four children would go into a room together and "hug each other, and get each other through it." The phone calls were eventually stopped because of how inconsistent Mother and Father were. In May 2020, a no-contact order was entered to halt the inconsistent visits. Mother last saw the children on October 12, 2019. Father last saw the children in September of 2019—nearly fourteen months prior to trial. Father did not send letters, cards, or gifts to the children. Mother also did not provide gifts to the children, but she did write one letter from jail. Both the case worker and the guardian ad

litem read Mother's letter and determined that it was too inappropriate for the children to read.

Meanwhile, the evidence shows that the children are thriving in their current foster home. All four children are bonded with the foster parents and call them either "mom and dad" or "mamaw and papaw." The children initially struggled behaviorally in the foster home. Madylynn struggled with anger issues; William frequently talked back and was disrespectful; Rylee cried every night; and the children fought amongst themselves. However, the record shows that the children have made tremendous progress in the foster home and, at the time of trial, the foster mother and DCS caseworker noted that the children were very happy in their current placement. The foster parents ensure that the children receive trauma counseling and regular counseling to address any lingering issues they may have. Because of the stability they enjoy in the foster home, the children are now well adjusted. Madylynn has improved her communication skills. She is able to make friends easily and enjoys cheerleading and going to dances and football games. Since coming into foster care, William demonstrates respectful behavior. He enjoys football, fishing, and hiking. Likewise, Rylee no longer cries herself to sleep. She enjoys playing with dolls and her siblings. Carson is well adjusted and loves to play with his toys. The foster parents clearly provide the structure, routine, care, and affection that these children need. To remove them from their current placement would surely cause them emotional and psychological detriment. From the totality of the circumstances, there is clear and convincing evidence to support the trial court's finding that termination of Appellants' respective parental rights is in the children's best interests.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order terminating the parental rights of both Mother and Father. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to Appellant, Afton C., and one-half to Appellant, Preston S. Because both Afton C. and Preston S. are proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

- 19 -